IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WHITMOYER FORD, INC. and<br>WHITMOYER BUICK CHEVROLET, INC. | : | CIVIL ACTION |
| Plaintiffs | : | |
| vs. | : | NO. 09-CV-03475 |
| REPUBLIC FRANKLIN INSURANCE<br>COMPANY | : | |
| Defendant | : | |

**MEMORANDUM OPINION AND ORDER**

GOLDEN, J.                                                                                                                April 1, 2010

**I.  Introduction**

Before the Court are the parties' cross-motions for summary judgment in this declaratory judgment action.  Plaintiffs, a family of auto dealerships in Lancaster County, seek a declaratory judgment that the Defendant insurance company owes them an additional payment toward a loss suffered in 2009, as well as compensatory and punitive damages for bad faith.  Defendant, a New York-based insurance company, seeks a declaratory judgment that it has satisfied its obligations under the insurance policy.  Because the Court concludes that the insurance company properly applied the co-insurance provision of a clear and unambiguous policy in determining the amount of money owed to Plaintiffs following their losses, it grants summary judgment in favor of the insurance company.

**II.  Factual Background**

The material facts of this case are not in dispute.  Plaintiffs purchased a commercial insurance policy from Defendants, which took effect on March 19, 2009.  (Pl.'s Statement of Undisputed Facts

¶ 1). On March 7, 2009, the inventory on Plaintiffs' auto lots did not exceed $3,952,000. (*Id.* ¶ 2). Between March 7 and March 29, 2009, Plaintiffs' inventory increased to $4,202,561. (*Id.* ¶ 3).

A hail storm swept through Lancaster County on March 29, 2009, causing significant damage on Plaintiffs' lots. (*Id.* ¶ 4). Plaintiffs reported losses of $1,331,805.17 to Defendant. (*Id.*) For the first time in the course of the parties' business relationship, Defendant applied a "co-insurance" penalty provision from Plaintiffs' insurance policy, declining to pay Plaintiffs $52,755.25 of their reported losses.[1] (*Id.* ¶¶ 10, 11). Defendant calculated the co-insurance penalty of 5.96 percent by dividing the limit of insurance amount shown in the declaration page of Plaintiffs' policy, $3,952,000, by the total value of the inventory on Plaintiffs' lots at the time of the loss, $4,202,561 (Def.'s Br. In Support of Mot. Exh. B).

### III. The Language of the Policy[2]

Plaintiffs highlight the following policy language, concerning "Owned Autos You Acquire After the Policy Begins," from page two of fifteen, found in Section I–Covered Autos:

1. If symbols 21, 22, 23, 24, 25, or 26 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if symbol 27 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

---

[1] Although $55,755.25 is less than the amount required to confer diversity jurisdiction on the Court, Plaintiffs' additional claim for an unspecified amount of punitive damages for bad faith lifts their complaint over the jurisdictional hurdle. *Denicola v. Progressive Direct Ins. Co.*, 2009 U.S. Dist. LEXIS 51372, at * 5 (W.D. Pa. June 16, 2009)(citing *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 354 (3d Cir. 2004).

[2] A copy of the policy is attached as Exhibit A to Defendant's Brief in Support of its Motion.

2

  b. You tell us within thirty (30) days after you acquire it that you want us to cover it for that coverage.

Plaintiffs' insurance policy includes the following "Limits of Insurance" language, found on page ten of fifteen, under Section IV–Physical Damage Coverage:

 1. The most we will pay for "loss" to any one covered "auto" is the lesser of:

  a. The actual cash value of the damaged or stolen property as of the time of "loss"; or

  b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

 2. For those businesses shown in the "Declarations" as "auto" dealerships, the following provisions also apply:

  a. Regardless of the number of covered "autos" involved in the "loss," the most we will pay for all "loss" at any one location is the amount shown in the Auto Dealers Supplementary Schedule for that location. Regardless of the number of covered "autos" involved in the "loss," the most we will pay for all "loss" in transit is the amount shown in the Auto Dealers Supplementary Schedule for "loss" in transit.

  c. Non-Reporting Premium Basis. If, when "loss" occurs, the total value of your covered "autos" exceeds the Limit of Insurance shown in the Declarations, we will pay only a percentage of what we would be otherwise obligated to pay. We will determine this percentage by dividing the limit by the total values you actually had when "loss" occurred.

The insurance contract allows the insured to choose between a "reporting" or "non-reporting" premium basis for its physical damage coverage. Dealerships that choose a reporting basis must submit quarterly or monthly reports to the insurer, detailing the value and location of the covered autos; the insurer calculates premiums pro rata based on these reports. If a dealership chooses a non-reporting premium basis, a "stated limit of insurance" applies to its policy. (Def.'s Br. In Support of its Mot. Exh. A. P. 4).

Plaintiffs note that symbol 27 is marked on their Declarations page, within their "Schedule of Coverages and Covered Autos." Plaintiffs argue that because symbol 27 appears on their Declarations page, and because they had reported their additional inventory to Defendant within 30 days of its acquisition, all of their inventory should have been covered by their insurance policy at the time of the hail storm. Plaintiffs assert that the after-acquired auto provision found in the "Covered Autos" section of the policy "allows an insured to increase the amount of insurance the insured needs as long as the insured gives timely notice to the carrier." (Pl.'s Br. P. 7).

## IV. Standard of Review

Summary judgment should be granted if the record, including pleadings, depositions, affidavits, and answers to interrogatories demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. See also *Sommer v. The Vanguard Group*, 461 F.3d 397, 403-04 (3d Cir. 2006).

This matter is before the Court on the basis of diversity jurisdiction. The Court is therefore obligated to apply the substantive law of Pennsylvania. *Nationwide Mut. Ins. Cas. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000). The interpretation of an insurance contract is a matter properly before the court in a declaratory judgment action. *Aetna Cas. and Sur. Co. v. Roe*, 650 A.2d 94, 98 (Pa. Super. Ct. 1994). Where the language of a policy is unambiguous, the court must give effect to that language. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). Policy language is ambiguous if it is reasonably susceptible to more than one meaning.

4

*Donegal Mut. Ins. Co. v. Raymond,* 899 A.2d 357, 361 (Pa. Super. Ct. 2006). A disagreement between the parties regarding the construction of a contract does not render an insurance policy ambiguous. *Id.* Any ambiguity must be construed against the insurance company, as the drafter of the policy. *Mohn v. American Cas. Co. of Reading*, 326 A.2d 346, 352 (Pa. 1974). In evaluating an insurance policy, a court must consider all provisions in context, and read the insurance policy as a whole. *Madison Construction Co. v. Harleysville Mut. Ins. Co.*, 678 A.2d 802, 805 (Pa. Super. Ct. 1996).

## IV. Analysis

The Court must give effect to the unambiguous language of an insurance policy. In this case, the Court simply does not see language that is susceptible to more than one meaning by a reasonable reader. The insurance contract states in its "Limits of Insurance" section that "[r]egardless of the number of covered 'autos' involved in the 'loss,' the most we will pay for all 'loss' at any one location is the amount shown in the Auto Dealers Supplementary Schedule for that location." A reasonable reader would understand that, regardless of the status of any particular "auto" on Plaintiffs' lot, the insurance policy only covers "losses" up to a certain value. The fact that a dealer can replace its stock of autos, and may bring a specific vehicle under its policy by reporting its acquisition to the insurer, does not alter the total dollar limit of the insurance policy.

The Court has read the language that Plaintiffs cite regarding symbol 27 and after-acquired autos, and cannot conclude that this language, read in context with the clearly stated limits of the policy, could reasonably be interpreted as permitting an auto dealer to increase its coverage by reporting the arrival of new stock to its insurer. The Court notes that this language appears in the section on "Covered Autos," separate and distinct from the section on "Physical Damage Coverage." By breaking these ideas apart, the structure of the policy suggests that a reader should first consider

5

whether a particular auto is covered, and then consider the overall limits of coverage provided by the policy. Although the policy allows an after-acquired auto to come under coverage, the section on "Physical Damage Coverage" sets forth obvious upper limits of the coverage. Read together, these provisions do not support Plaintiffs' argument that they could increase their level of insurance at will by reporting new autos to Defendant.

Moreover, the policy clearly sets forth that the insured must choose between a reporting and non-reporting premium basis. The Court reads the section of the policy distinguishing reporting from non-reporting premium bases as an unambiguous statement that auto dealers who wish to have more flexibility in the level of coverage they receive must be willing to pay a premium calculated pro rata. A static premium yields a static limitation on coverage. As Defendant notes correctly, courts have evaluated and approved non-reporting form policies for many years. *Peters v. Great American Ins. Co.*, 177 F.2d 773, 774 (4th Cir. 1949). The Court does not perceive any ambiguity in the language which led Plaintiffs to chose a non-reporting form policy.

In addition, the Limits of Coverage section makes clear that for dealers who choose a non-reporting policy, "if, when 'loss' occurs, the total value of your covered 'autos' exceeds the Limit of Insurance shown in the Declarations, we will pay only a percentage of what we would otherwise be obligated to pay." The Court holds that in light of this language, a reasonable reader could not conclude that Plaintiffs could adjust their limits of insurance without selecting a reporting basis for their premiums, and allowing the insurer the opportunity to calculate their premiums pro rata.

Finally, Plaintiffs invoke the doctrine of reasonable expectations, arguing that the insurer's failure to inquire about their inventory or apply the co-insurance provision in the past led Plaintiffs to reasonably expect that their total inventory would be covered. The reasonable expectations of the parties to an insurance contract are generally determined by the language of the contract itself.

6

*Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997). Courts are also instructed to look at the totality of the circumstances of the insurance transaction in determining what the insured's reasonable expectations might be. *Id.* Common sense dictates, however, that "[a]ny reasonable expectation which would be imputed to the parties by this or any court must necessarily rely upon, and be reasonably consistent with, the written document and phraseology, simply because any interpretation advanced contrary to the contents of the written document could hardly be viewed as 'reasonable' to assert; unless good reason in law is advanced for the disregarding of the clearly contrary phraseology." *J.H. France Refractories Co. v. Allstate Ins. Co.*, 578 A.2d 468, 472 (Pa. Super. Ct. 1990).

In the instant case, Plaintiffs' interpretation of the contract is so at odds with the language of the policy that their expectation of coverage cannot be called "reasonable." Defendant's failure to apply the co-insurance penalty to smaller claims does not change the clear language of the policy. Plaintiffs provide no viable reason for this Court to disregard the language of the policy. There is no suggestion in the record that the insurer altered the policy, or withdrew coverage that had been available under previous versions of the policy. There is no suggestion that Plaintiffs received less than the coverage for which they bargained. Under the circumstances, the doctrine of reasonable expectations is inapplicable.

The Court finds that the insurer provided coverage consistent with the policy.[3] As a result, summary judgment is granted in favor of Defendant.

An appropriate Order follows.

---

[3] Because the Court holds that the insurer had a reasonable basis for applying the policy's co-insurance provision, it also dismisses Plaintiffs' bad faith claim. *Condido v. Erie Ins. Exchange*, 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006).